1  Marc Steven Applbaum Esq. SBN# 222511
2  MIDWAY LAW FIRM APC
   4275 Executive Square, Suite 200
3  La Jolla, Ca 92037
   760 484-1203
4  marc@midwaylawfirm.com

5  **Attorney for PLAINTIFFS JEFFREY M. GIANNELLI AND LISA M. GIANNELLI**

6

7

8              **DISTRICT COURT OF THE UNITED STATES**

9        **CENTRAL DISTRICT OF CALIFORNIA (ORANGE COUNTY)**

10

11

12  JEFFREY M. GIANNELLI, LISA M.        )   **Case No**:
13  GIANNELLI,                          )
                                        )   **COMPLAINT FOR DAMAGES AND**
14                                      )   **EQUITABLE RELIEF**
                                        )
15              Plaintiffs,             )   **1.VIOLATION OF CALIFORNIA**
                                        )      **HOMEOWNER BILL OF RIGHTS**
16          vs.                         )   **2.STATUTORY UNFAIR COMPETITION**
                                        )    **CALIFORNIA  BUSINESS AND**
17  NEWREZ, LLC DBA SHELLPOINTE         )   **PROFESSIONS CODE SECTION 17200**
18  MORTGAGE SERVICING, A DELAWARE      )   **ET. SEQ.**
    CORPORATION; JP MORGAN CHASE  and   )   **3. BREACH OF COVENANT OF GOOD**
19  DOES 1 through 50, Inclusive        )   **FAITH AND FAIR DEALING**
                                        )   **4. NEGLIGENCE**
20              Defendants.             )
                                        )   **JURY TRIAL DEMANDED**
21                                      )
22                                      )
23                                      )
24                                      )
25                                      )
26  _____    )

27

28

Plaintiffs, JEFFREY M. GIANNELLI and LISA M. GIANNELLI allege as follows:

**PARTIES**

1. Plaintiffs, JEFFREY M. GIANNELLI, LISA M. GIANNELLI ("Plaintiffs") are, and at all times relevant to the facts herein was, individuals residing in real property commonly known as 4158 Costero Risco, San Clemente, CA 92673 ("Subject Property") located in the County of Orange in this district.

2. Plaintiff is informed and believes and based thereon alleges that Defendant NEWREZ, LLC DBA SHELLPOINTE MORTGAGE SERVICING, A DELAWARE CORPORATION ("SHELLPOINTE") is, and at all times relevant to the facts herein  was, a national association, registered in the state of California, doing business in this district as a loan servicer and investor.

3. The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 50, are unknown to Plaintiff who sues each Defendant by such fictitious names. Plaintiff is informed and believes and based thereon alleges each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, was responsible for events and happenings referred to herein, either contractually or tortuously. When Plaintiff ascertains the true names of capacities of DOES 1 through 50, she will amend this complaint accordingly.

4. Plaintiff is informed and believes and based thereon alleges that Defendants and each of them, are, and at all times herein were, the agents, joint ventures, officers, members, representatives, servants, consultants or employees of their co-defendants, and in committing the acts herein allege, were acting within the scope of such affiliation with knowledge, permission, consent or subsequent ratification of their co-defendants.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this matter, as the Subject Property is located in the County of Orange, California in this district.

6. In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to *California Constitution* Article VI, section 10, which grants this Court "original jurisdiction in all causes except those given by statute to other trial courts."

7. Defendants herein purposefully directed their activities in this district. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Orange, out of which this action arises and which form the basis of this action.

8. Defendants either are entities duly licensed to do business in the State of California or are entities that regularly conduct business within this judicial district within California.

9. Venue is proper for this Court since the Subject Property is located in this district because events or events out of which this action arises and which form the basis for this action arise in the County of Orange.

10. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the Plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987)

**STATEMENT OF FACTS**

11. On or about November 26, 2003, Plaintiff financed the Subject Property for $745,000.00. As evidence of the loan, Plaintiff executed a promissory note ("Note"), and concurrently executed Deed of Trust ("Deed of Trust") as security for the Note. The Deed of Trust for the Subject Property

was recorded as Document No. 432520 in the Official Records of the Orange County Recorder's Office. The named Lender in the Deed of Trust was Washington Mutual Bank, FA. The named Trustee in the Deed of Trust was California Reconveyance Company.

12. The Subject Property is Plaintiff's principal residence and is owner-occupied.

13. In late September of 2008, Defendant CHASE acquired Washington Mutual Bank, FA. Upon this acquisition, CHASE began servicing Plaintiff's home loan.

14. Subsequently, during or around mid- 2006, Plaintiffs (collectively "The GIANNELLI'S") began experiencing economic hardship and a decreased ability to keep up on the mortgage  and spent the following year consistently attempting to keep up on payments all while working to stabilize their financial situation.

15. On or about December 1, 2006, Defendants caused to be recorded a Notice of Default after recording and Assignment of Deed of Trust purported to transfer the beneficial interest under the Deed of Trust to Defendant CHASE. The Notice of Default was recorded as Document 260084 at the Orange County Recorder.

15.  The NOD contains a boilerplate "Declaration of Compliance" claiming CHASE complied with Cal. Civ. Code 2923.55 prior to commencing foreclosure activities. More specifically: "The mortgagee, beneficiary or authorized agent tried with due diligence but was unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required." This is false. CHASE made no attempt to contact Plaintiff regarding assistance until after the recording of the NOD.

16. At no point did CHASE encourage Plaintiff to apply for assistance or provide Plaintiff with an exhaustive list of what opportunities may be available prior to the recording. At the time,

CHASE maintained the only option was to reinstate the loan. However, following the recording of the NOD, in late 2013, at the direction of CHASE in the hopes of curing a portion of the default and prompting CHASE to assist them. Despite CHASE's instruction to make a bulk payment, CHASE refused to work with the GIANNELLI'S until the foreclosure sale date of the property was already set contrary to California law.

18. On or about January 10, 2011 and on July 13, 2012 an agent of Quality Loan Servicing alleging to be the trustee under the Deed of Trust, caused to be recorded a Notice of Trustee's Sale ("NTS") in the Official Orange County Recorder's Office Records as Document No. 260084 and 397047.

19. Starting in 2009, PLAINTIFFS applied for a loan mod that was denied and that DEFENDANTS made no attempts to assist PLAINTIFFS until 2018. In 2018, GIANNELLI'S began to communicate with SHELLPOINT DBA SPECIALIZED LOAN SERVICES regarding a loan modification with its loss mitigation department where the GIANNELLI'S provided all requested documents to begin the review for assistance, more specifically loan modification and confirmed receipt of the documents and informed the GIANNELLI'S the review process would be quick and efficient. At all times material, DEFENDANTS would not accept payments while the application remained pending. The GIANNELLI'S relied on the representations of DEFENDANTS and hoped to receive an answer shortly that never came.

20. Following, the GIANNELLI'S patiently waited a decision, despite the initial stall in submitting a complete package. The GIANNELLI'S followed up weekly and were consistently told their application was complete and in review.

21.  GIANNELLI'S followed up weekly for status updates. At this point, they became significantly worried that the prolonged review period, continuing to build upon the default, would ultimately disqualify them for modification leaving them with no opportunity to catch up on their payments.

22. On April 25, 2019, an agent of the Defendants recorded a Notice of Default.

23. In 2024, GIANNELLI'S contacted SHELLPOINT as to their financial hardship and in 2024 engaged a commecial loan modification company that submitted a new loan mod package that was denied after learning that SHELLPOINT had sold their mortgage company to NEWREZ that advised them that they could not accept a loan modification within 37 days prior to a scheduled trustee sale.

24. At no time were the GIANELLI'S advised that their mortgage note had been again sold to a new servicing company or did the new servicer contact them with loss mitigation options to save their home from foreclosure in violation to California law.

## FIRST CAUSE OF ACTION
## VIOLATION OF CALIFORNIA HOMEOWNER BILL OF RIGHTS

(Against ALL Defendants)

25. Plaintiff hereby incorporates by this reference paragraphs 1 through 24, as though fully set forth herein.

26.  The Homeowner Bill of Rights ("HBOR") consists of a series of related bills including two identical bills that were passed on July 2, 2012 by the state Senate and Assembly: AB 278 (Eng, Feuer, Pérez, Mitchell) and SB 900 (Leno, Evans, Corbett, DeSaulnier, Pavley, Steinberg). Both of

these bills ultimately give rights back to borrowers and create a system in which banks can be held accountable for pursuing their own interests above the borrowers.

27.  Lenders, such as CHASE AND NEWREZ, are now legally obligated to ensure a borrower receives a "meaningful" opportunity to be considered for any and all options available to avoid foreclosure. It also guarantees struggling homeowners a single point of contact at their lender with knowledge of their loan and direct access to decision makers, and imposes civil penalties on fraudulently signed mortgage documents.

28.  At least 30 days prior to the recording of an NOD, Cal. Civ. Code § 2923.55 requires that a mortgage servicer contact the borrower to assess their financial situation and provide information regarding all available opportunities to avoid foreclosure.

29.  Upon recording an NOD, a mortgage servicer is also required to include a Declaration of Compliance, certifying that the requirement was adhered to. Here, the declaration states CHASE "exercised due diligence to contact the borrower pursuant to Cal. Civ. Code § 2923.55(f) to assess the borrower's financial situation and explore options to avoid foreclosure." Said declaration is false. Plaintiff was not provided with an assessment of her financial situation and further was advised of the available opportunities for assistance until after the NOD was recorded.

30.  CHASE's failure to contact Plaintiff to discuss foreclosure prevention programs evidences that CHASE did not adhere to the requirement of offering Plaintiff a meaningful review and instead, placed their own interests above Plaintiff's. Plaintiff notified CHASE of the hardship she was experiencing and CHASE failed to provide the GIANNELLI'S with any notice of potential help.

31. Cal. Civ. Code § 2923.6 prohibits "dual tracking," the practice of evaluating a borrower for a modification while simultaneously proceeding with a foreclosure. If a borrower submits a complete loan modification application, the mortgage servicer is prohibited from initiating or

continuing foreclosure proceedings until the mortgage servicer makes a written determination that the borrower is not eligible for a loan modification, and any appeal period has expired. Cal. Civ. Code § 2923.6(c)(1).

32.  Under Cal. Civ. Code § 2923.6(h), an application shall be deemed completed when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

33.  Plaintiff alleges that Defendants continued the foreclosure process while claiming she was in review for a loan modification. Plaintiff diligently followed all instructions given by CHASE. Plaintiff had submitted all requested documents at the time of the recording of the July 27, 2016, NTS. Following the recording, CHASE alleged Plaintiff's documents submitted the month prior via FedEx were not received, despite confirmations from FedEx to the contrary. Additionally, on July 11, 2016, CHASE representative Charest failed to provide Plaintiff's with any further instructions and did not inform Plaintiff that the documents included in the package were still required.

34.  Additionally, per Cal. Civ. Code § 2923.6, if a loan modification application is denied, a mortgage servicer is required to send a borrower written notice identifying the reasons for denial, including (1) timing and instructions for requesting an appeal; (2) if applicable, reasons for investor disallowance of the loan modification; (3) information related to net present value calculation, if denial was based on this calculation; (4) if applicable, a finding of a prior failed loan modification; and (5) a description of other foreclosure prevention alternatives for which the borrower may be eligible. A mortgage servicer must provide a borrower at least 30 days from the date of a written denial to appeal the denial and provide evidence that the mortgage servicer's determination was in error.

35.  The denials CHASE provided to Plaintiff did not conform to the above standards. Not only were the bases for the denials inaccurate, CHASE's responses to Plaintiff's appeals did not include explanations for the discrepancies.

36. Cal. Civ. Code § 2923.7 provides that upon the request of a foreclosure prevention alternative, the mortgage servicer "shall promptly establish a single point of contact and provide the borrower one or more direct means of communication with the single point of contact." There is no requirement that the borrower must specifically request that a single point of contact be assigned. *McFarland v. JPMorgan Chase,* 2014 WL 4119399 at *11 (C.D. Cal. Aug. 21, 2014); *See also Mungai v. Wells Fargo Bank,* 2014 WL 2508090 (a plain reading of § 2923.7 required lender to assign a single point of contact when a borrower requested a foreclosure prevention alternative).

37.  This provision is intended to prevent borrowers from being given the runaround, being told one thing by one bank employee while something entirely different is being pursued by another." *Lapper v. SunTrust Mortg., N.A.*, 2013 WL 2929377 at 2 (C.D. Cal. June 7, 2013).

38. Cal. Civ. Code § 2923.7(b)(3) requires a contact to have access to current information and be able to timely, adequately, and accurately inform the borrower of the current status of her foreclosure prevention alternative.

39.  Regardless of CHASE's assigning of "case managers" to Plaintiff's file, Plaintiff spent over two years submitting documents to be reviewed. When Plaintiff did have questions about the review period, the representatives rarely could provide answers. The multitude of submissions of additional documents evidences CHASE's failure to provide Plaintiff with accurate instructions. The prolonged review period effectively forced Plaintiff into an unrecoverable default. Had CHASE representatives been able to provide Plaintiff with a list of required documents *at one time*, the prolonged review could have been avoided.

40.  Additionally, on more than one occasion, Plaintiff's assigned case managers made promises to Plaintiff they could not keep, including the negotiating of down payments and timelines for when a decision would be rendered.

41.  CHASE's failure to provide Plaintiff with a competent single point of contact caused undue delays in the processing of her loan, which is a material violation of § 2923.7. *Segura v. Wells Fargo Bank, N.A.,* 2014 WL 4798890 (C.D. Cal. Sept. 26, 2014). Had Plaintiff been able to obtain timely and accurate status updates, she likely would have been able to avoid the prolonged and inefficient review period or procure an alternative means of assistance.

42.  Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the potential loss of the Subject Property, the cost and expense of the instant pending litigation, continuing emotional distress, and other actual consequential damages that will be proven on date of trial. Furthermore, Plaintiff has been harmed in that she was unable to exercise her rights to reinstate the loan under Cal. Civil Code section 2924c, as well as exercise her right to secure other alternatives to foreclosure.

## SECOND CAUSE OF ACTION
## STATUTORY UNFAIR COMPETITION – CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 ET SEQ.

(Against ALL Defendants)

43. Plaintiff hereby incorporates by this reference paragraphs 1 through 42, as though fully set forth herein.

44. Defendant's conduct as alleged herein constitutes unlawful, unfair or fraudulent business act(s) or practice(s) within the meaning of California Business and Professions Code §17200 et seq.

45. Specifically, Defendants are unlawfully and unfairly proceeding with foreclosure against California homeowners, including Plaintiff, in direct violation of California Civil Code foreclosure procedure statutes, including newly amended statutes implemented effective January 1, 2013 by way of AB 237 and SB 900.

46. To bring a claim under the "fraudulent" prong of the UCL, borrowers must show that members of the public are likely to be deceived by servicer's actions. Here, CHASE's assurance that Plaintiff's would be properly reviewed for modification, and then it's subsequent delay in processing applications and documentation and CHASE's evident negligence in reviewing Plaintiff's financials, resulted in increased late fees and penalties and an insurmountable default. This practice could be construed as deceptive to the public. *Pestana v. Bank of America, N.A.,* 2014 WL 26168402 (Cal. Ct. App. June 12, 2014).

47. The "unfair" prong of the UCL refers to practices that violate legislatively stated public policy. The Homeowner Bills of Rights demonstrates the strong public policy in favor of protecting homeowners from foreclosure, as evidenced by recently enacted state and federal regulations. *See, e.g.,* Cal. Civ. Code § 2923.6 (encouraging the option of loan modification for borrowers). Defendant's unlawful practices described above runs counter to California' stated public policy and have given them an unfair advantage over their competitors. *Perez v. CitiMortgage, Inc.*, 2014 WL 2609656, at *8 (C.D. Cal. June 10, 2014) (finding servicer's misrepresentations regarding borrower's application status led to a deliberately drawn-out and unsuccessful modification process, resulting in harm to the borrower that outweighed the utility of servicer's action). This is precisely what CHASE has done to Plaintiff.

48. CHASE misrepresented the status of Plaintiff's application, which unreasonably stalled the modification process and led to the initiation of foreclosure on Plaintiff's home. Additionally, CHASE falsified denials as a means to further build on Plaintiff's default and lull her into imminent foreclosure.

49. Plaintiff has suffered injury in fact, including loss of equity in her home by growth in amounts of delinquent interest, declining property value and late fees, costs and expenses related to protecting herself, fees and costs, including but not limited to, attorney's fees and costs and higher cost of obtaining credit due to the deterioration of her credit score.

50. Plaintiff has additionally been damaged in the amount of foreclosure fees and costs already charged to and added to Plaintiff's loan, in an amount to be proven at trial.

51. The fees and costs charged by Defendants were charged without any legal authority to do so and in direct violation of the statutory mandate of Cal. Civ. Codes §§ 2923.55 and 2923.6.

52. Defendants must be required to disgorge any profit or gain that they obtained as a result of their wrongful conduct as herein alleged.

53. Plaintiff is entitled to equitable relief in the form of an order requiring Defendants to disgorge all profits or gain they have obtained from Plaintiff or at the expense of Plaintiff and members of the general public by reason of their unlawful, unfair or fraudulent business act(s) and practice(s) and an injunction enjoining Defendants from continuing said acts or practices.

**THIRD CAUSE OF ACTION**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
(Against ALL Defendants)

54. Plaintiff hereby incorporates by this reference paragraphs 1 through 53, as though fully set forth herein.

55. Defendant's conduct, as alleged above, constitutes a breach of the covenant of good faith and fair dealing implied in every contract under California law. This covenant creates an obligation in Defendant not to hinder or prevent Plaintiff's ability to perform under the contract or receive the benefit of the contract.

56. On or about February 12, 2007, Plaintiff entered into a loan agreement, executing a Promissory Note and Deed of Trust in favor of Washington Mutual Bank, FA, and subsequently Defendant CHASE. Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing and interfered with Plaintiff's ability to perform under the contract by inducing Plaintiff into a prolonged review period for assistance whereby CHASE would not accept Plaintiff's monthly payments. CHASE further effectively precluded Plaintiff from qualifying for loan modification by miscalculating Plaintiff's monthly income, relying upon inaccurate appraisals, and refusing to remedy their indiscretions.

57. For years, Plaintiff substantially performed under the loan agreement, making her monthly payments on time and in full every month. Plaintiff experienced a short period of financial hardship only to get back on her feet and retain the ability to afford the home.

58. However, when Plaintiff's hardship ended, CHASE effectively precluded Plaintiff from performing under the contract by refusing to provide a timely and accurate review despite recognizing Plaintiff's ability to become current.

GIANNELLI – FEDERAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

59.  Therefore, because CHASE induced Plaintiff not to perform under the contract,
Plaintiff's performance was excused as set forth under Cal. Civ. Code § 1511, which states if a
defendant does some act naturally tending to induce the plaintiff not to perform, the plaintiff's failure
to perform is excused. *See Boring v. Nationstar Mortg., LLC*, 2014 WL 5473118 (E.D. Cal. Oct. 28,
2014) (servicer's inducement of borrower's delinquency excused borrower's performance under the
deed of trust).

60.  When a party is excused from performing, he is entitled to all the benefits of the contract
had it been performed by both parties. Cal. Civ. Code § 1512. As such, no conditions existed that
would interfere with Defendant performing under the contract, and all conditions necessary for
Defendant to fulfill its obligations under the contract had occurred when Defendant coerced Plaintiff
to stay behind on her payments at the mercy of Defendant's negligent and prolonged review. In fact,
this promise was designed to induce and coerce Plaintiff to miss payments so that Defendant could
foreclose on Plaintiff's loan.

61.  As a proximate result of Defendant's acts and practices, Plaintiff's credit has been
detrimentally impacted, and Plaintiff now risks the loss of his home through foreclosure.

62.  Plaintiff has incurred contract damages, according to proof at trial, attorney's fees, costs
to save the home, and loss of equity.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
(Against ALL Defendants)

63.  Plaintiff hereby incorporates by this reference paragraphs 1 through 62, as though fully
set forth herein.

64. The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50Cal.Rptr.2d 309, 911 P.2d 496].)

65.  At all times relevant herein, Defendants, acting as Plaintiff's lenders and servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, disclosing to Plaintiff the real status of any foreclosure actions taken by it, refraining from taking any action against Plaintiff outside its legal authority, and providing all relevant information regarding Plaintiff's loan accounts with Defendants.

66.  In *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014), the court found that, though a servicer is not obligated to initiate the modification process or to offer a modification, once it agrees to engage in the process with the borrower it owes a duty of care not to mishandle the application or negligently conduct the modification process. *See also*, *Ware v. Bayview Loan Servicing, LLC,* 2013 WT 6247236, at *9 (S.D. Cal. Oct. 29, 2013) [denying motion to dismiss borrower's negligence claim because servicer may owe a duty of care to maintain proper records and timely respond to modification applications].

67.  Accordingly, by engaging in protracted loan modification negotiations with Plaintiff, Defendants owed Plaintiff a duty to conduct honest, timely and accurate evaluations of Plaintiff's loan modification applications and to carefully handle Plaintiff's sensitive financial and personal information contained in those applications.

68.  It is true that some courts have held that in the standard lender/borrower relationship, a duty of care is not necessarily created. For instance, the court held in *Nymark v. Heart Federal*

*Savings & Loan Association*, 231 Cal. App. 3d 1089, l095 (1991) that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."

69.  However, the *Nymark* court simply found that a duty was not owed under the facts in that case after analyzing them pursuant to the six part test established in *Biakanja v. Irving*, 49 Cal2d 647, 122 P.2d 294, which looks to (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame, and (6) the policy of preventing future harm.

70.   In analyzing the first *Biakanja* factor, whether or not the transaction was intended to affect the plaintiff, courts have held that a defendant's conduct is found to affect the plaintiff if the defendant commits the conduct with knowledge of plaintiff's circumstances. *See e.g., Jolley v. Chase Financial, LLC* (2013) 213 Cal.App.4th 872, 900.

71. Here, by stringing Plaintiff along for years in pursuit of a modification, Defendants undeniably intended to affect Plaintiff. Defendants knew that prolonging Plaintiff's review period for years would forever change her status regarding her mortgage for the worse.

72.   Defendants should have foreseen the harm being done to Plaintiff due to their knowledge and expertise in the financial industry as well as complete control over Plaintiff's loan and loan modification review process. Further, it only requires common sense to determine that (1) if a lender decides to commence foreclose on a borrower's home without first providing the borrower a written determination of the borrower's loan modification application, or advise her of her appeal rights, the ensuing foreclosure will ultimately harm the borrower; and (2) that a borrower's credit will be

harmed and the borrower will owe more in arrears the longer a lender drags out stalls the loan modification process. Thus, foreseeability of harm is clear.

73. The foreseeability of harm to Plaintiff was high because the failure to work with Plaintiff as promised, and the failure to provide a timely, accurate, and good faith loan modification review, has caused Plaintiff to be in real danger of losing her home and having her credit destroyed, not to mention limiting her options to those that will only benefit Defendants in the long run. Plaintiff has been injured: her credit has been destroyed, she lost the ability to cure the delinquency on her loan, and she faces the imminent danger of losing her home despite her illustrated ability to CHASE that she can afford the payments.

74. In regard to the closeness of the connection between Defendants' conduct and Plaintiff's injury, Defendants' conduct was firmly and intimately tied to the harm because but for the actions and omissions of Defendants, Plaintiff would not be facing imminent foreclosure of her home. Her financial hardship ended more than two years ago. Because Defendants were in full control of the loan modification process, it is reasonably foreseeable that Plaintiff would rely on Defendants to conduct a good faith loan modification review and would not seek other alternatives to prevent foreclosure of the home or mitigate the debt owed.

75. In regard to moral blame, Defendants' conduct was morally reprehensible as they acted without any regard for distressed homeowners, including the Plaintiff, who tried desperately to save the Property from foreclosure during a national recession

76. CHASE was uncommunicative and left Plaintiff in the dark for months while continuing to build upon the loan's default. CHASE's recording of the NTS prior to providing a decision for Plaintiff's application evidences the type of conduct that the legislature has enacted codes to prevent. Subjecting a borrower to dual tracking is illegal conduct that reinforces the view that Defendants'

conduct was blameworthy. *See Ansanelli v. JPMorgan Chase Bank, N.A.*, No 10-cv-03892-WHA, 2011 WL 1134451, at \*1.

77.   Furthermore, at the time Defendants made their representations and/or omissions to Plaintiff as alleged above, they knew, or had reason to know, that said representations and/or omissions were in fact false, and nevertheless made them with the intent to defraud Plaintiff and cause Plaintiff to believe her home would not be foreclosed upon. Had Plaintiff known the true facts, that Defendants never intended to offer a permanent modification, Plaintiff would have pursued other available legal remedies to protect her interests and would not have spent years in review for assistance only to be improperly denied base upon falsities.

78.   In analyzing the final *Biakanja* factor, the policy of preventing future harms, it is undisputedly clear that public policy encourages lenders and borrowers to work together to prevent a borrower from defaulting on his or her loan. *See Jolley,* 213 Cal.App.4th at 903 (the ongoing financial crises has caused the federal government to adopt programs that encourage lenders and borrowers to work together to prevent a borrower from defaulting on their loan). Here, any assistance Defendants offered to Plaintiff was done in bad faith and without any controls or supervision to ensure that Plaintiff would not be left worse off as a result of the loan modification application process.

79. Based on the foregoing, it is exceedingly clear that the *Biakanja* factors favor imposing a duty of care on Defendants, as their actions and conduct have gone beyond the role of a mere money lender.

80. Defendants breached their duty of care owed to Plaintiff by partaking in the following unreasonable conduct that caused injury to Plaintiff:

a. Defendants unfairly handled Plaintiff's loan modification applications by unreasonably delaying the review process and repeatedly requesting duplicative documents and supplemental information;

b. Defendants improperly reviewed Plaintiff's financials not once but twice, leaving Plaintiff to deal with excessive arrearages due to Defendants prolonged review;

c. Defendants negotiated opportunities to receive assistance and even make down payments without intending to follow through on promises;

d. Defendants relied upon miscalculations in reviewing Plaintiff for assistance, including the use of inaccurate appraisals;

e. Defendants negligently pushed Plaintiff further into an unrecoverable default by refusing to accept payments and allow Plaintiff to become current on the Note.

81.   Additionally, Defendants violated statutes that serve as the underlying violations for liability under the doctrine of negligence per se, including Cal. Civ. Codes §§ 2923.6 and 2923.7.

82.   These statutes were enacted by the California legislature specifically to protect the rights of innocent homeowners suffering from financial hardships. These statutes were also enacted by the California legislature specifically to prevent the same injury that Plaintiff will imminently suffer: wrongful foreclosure and subsequent eviction resulting from a wrongful foreclosure.

83.   The actions of Defendant are summarily denied Plaintiff of any opportunity to utilize the avenues at her disposal to avoid the loss of her home.   Defendant's actions, therefore, are a substantial factor in Plaintiff's harm.

84.   Defendants' violations directly and proximately caused the injuries suffered by Plaintiff. But for CHASE's promising Plaintiff and assistance and an accurate and timely review, Plaintiff

would not have spent so much time and resources working towards the modification. Additionally, had Defendants' complied with the aforementioned laws to begin with, Plaintiffs would not have suffered the very injuries that give rise to this Complaint because they would have been able to successfully pursue and obtain a non-foreclosure alternative and remain current on its loan.

85. Due to Defendants' negligent conduct Plaintiff suffered monetary loss, severe emotional stress at the impending loss of Plaintiff's home, loss of home equity, damaged credit, and more.

86. Plaintiffs demand damages in an amount to be proven at trial.

**WHEREFORE,** Plaintiffs prays for judgment against Defendants as follows:

1. A declaratory judgment and order of this Court that:

(A) Defendants, and each of them, may not foreclose on the Property until they have honored and proven that all statutory requirements stemming from and relating to Plaintiff's options to avoid foreclosure have been met.

(B) That Defendants failed to abide by their own guidelines in qualifying or reviewing Plaintiff for a loan modification in violation of Civil Code §2923.6.

(C) That Defendants and each of them, failed to provide the required statutory notifications and undertake the required courses of action as mandated under California Civil Code.

2. For a temporary restraining order, preliminary injunction and permanent injunction prohibiting Defendants from engaging in unlawful and deceptive acts and practices of foreclosing on property of California homeowners, including Plaintiff, without considering her for within their guidelines, and when anticipated recovery through a modification or workout plan exceeds anticipated recovery through foreclosure on a net present value basis.

3. For disgorgement of Defendants' illegal profits and gain, including but not limited to all foreclosure fees and costs charged California homeowners, including Plaintiff.

GIANNELLI – FEDERAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4. For an award of actual damages in an amount within the jurisdictional limits of this Court to be proven at trial.

5. For general damages, according to proof.

6. For special damages, according to proof.

7. For consequential damages, and incidental damages, according to proof.

8. For an award of reasonable attorney's fees pursuant to agreement of the parties, according to proof.

9. For an award of interest, including prejudgment interest, as provided by law.

10. For costs of suit; and

11. For such other relief as the Court deems just and proper.


DATED: November 10, 2024          MIDWAY LAW FIRM APC


                                  BY: /s/ Marc Steven Applbaum
                                  _____
                                  MARC STEVEN APPLBAUM
                                  Attorney for Plaintiffs

**VERIFICATION**

I,  Marc Steven Applbaum am the attorney for the PLAINTIFFS that are unavailable and absent from the County. Upon information and belief, I avow that the facts herein are within my knowledge and to the contents thereof. The same is true of my knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters are believed to be true.

I declare under penalty of perjury that the foregoing allegations true and correct and that this Verification was executed in San Diego, California.

DATED:  November 10, 2024          /s/ Marc Steven Applbaum

          Marc Steven Applbaum, Esq.
          Attorney for Plaintiffs

GIANNELLI – FEDERAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF